IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PHYLLIS D. BEARD, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-cv-00829 |
| ) | Judge Trauger |
| ROBERTSON COUNTY BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by defendant Robertson County Board of Education (Docket No. 21), plaintiff Phyllis Beard's response (Docket No. 25), and the defendant's reply (Docket No. 29). For the reasons discussed herein, the defendant's motion will be granted.

## FACTS

Plaintiff Phyllis Beard, an African-American female, was hired by the Robertson County Board of Education (the "Board") in 1968 as a fourth-grade teacher at Watauga Elementary School; she retired from the same position in 2007.[1] Over the course of her employment, the plaintiff applied for and was denied promotions to various administrative positions.

---

[1] Unless otherwise noted, the facts are drawn from the defendant's Statement of Undisputed Material Facts (Docket No. 23), the plaintiff's response (Docket No. 27), and related affidavits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, the court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

Early in Beard's career, the defendant did not review formal, written applications when filling positions. In the decades after the Board instituted a written application process, the plaintiff applied for five principal jobs, eight assistant principal jobs, and one job as a federal program supervisor. Beard claims that "none of [her] applications ever resulted in promotion." (Docket No. 26 ¶ 11.) Instead, the Board repeatedly hired white applicants, all of whom were allegedly less qualified than Beard. The exception was in 1997, when the plaintiff applied for the position of principal of Bransford Elementary School and the Board hired an allegedly less qualified African-American male.

In 1994, the defendant hired Beard for a year-long term as interim vice principal at Bransford Elementary.[2] This appears to be the plaintiff's only work experience as a principal or vice principal. Beard claims that the defendant planned for her to replace Bransford Elementary Principal Robert Farmer, an African-American male, when he retired. At the end of the school year, however, Director of Schools Jerome Ellis informed Beard that she would not be hired into a permanent administrative position at Bransford Elementary, citing an unflattering evaluation by Farmer. Beard returned to teaching fourth grade at Watauga Elementary. Beard claims that when she eventually obtained a copy of her evaluation, it was positive, giving her an overall score of 4.5 out of 5.

At issue now are Beard's three most recent applications for promotion. In March 2005, she applied for the position of principal of Coopertown Elementary School, and in July 2005, she

---

[2] Although Beard claims that none of her applications ever resulted in promotion, it is unclear how she was awarded this position, if not through an application process.

applied for two assistant principal positions at Springfield Middle School and Coopertown Elementary. The Board hired white applicants to fill all three jobs. The person ultimately responsible for making these hiring decisions was the Director of Schools; Daniel Whitlow replaced Ronnie Meador in that position on July 1, 2005.[3] Whitlow maintains that race had nothing to do with the defendant's hiring decisions.

The Coopertown Elementary principal job was given to Lori Smith, a white female who had been the assistant principal of that school since January 2001. Smith had also served as the interim principal of Coopertown Elementary for five months in 2003. In his affidavit, Whitlow

---

[3] Beard's affidavit states that, with the exception of the first several months of her employment, Jerome Ellis was the Director of Schools through 2007. This contradicts the claim in Whitlow's affidavit that Whitlow replaced Meador in 2005. In her response to the defendant's Statement of Undisputed Material Facts, Beard disputes the statement that Whitlow was responsible for hiring decisions after July 1, 2005. (Docket No. 27 ¶ 19.) But she cites a document, a "Response to Request for Information from the EEOC," that she has not filed with the court.

The Robertson County Schools web site confirms that Whitlow is the current Director of Schools. http://www.rcstn.net/home/system_administration_and_departments. In addition, the 2005 Annual Financial Report for Robertson County, compiled by the audit department of the Tennessee Comptroller of the Treasury, states: "Director of Schools Ronnie Meador retired June 30, 2005, and was succeeded by Dan Whitlow effective July 1, 2005." 2004-2005 Annual Financial Report at 43, *available at* http://www.comptroller1.state.tn.us/repository/CA/2005/Robertson.pdf. The Tennessee Department of Education's Annual Statistical Reports indicate that Meador replaced Ellis sometime around 2000. *Compare* 1999-2000 Annual Statistical Report at 10 (listing Ellis as Robertson County superintendent), *available at* http://www.k-12.state.tn.us/arc/asr9900/ASR9900.pdf, *with* 2000-2001 Annual Statistical Report at 10 (listing Meador as Robertson County superintendent), *available at* http://www.k-12.state.tn.us/arc/asr0001/asr00-01.pdf. These public reports fall under the hearsay exception in Federal Rule of Evidence 803(8).

Thus, the court may take judicial notice of the fact that Meador and Whitlow, not Ellis, served as Director of Schools in 2005. *See* Fed. R. Evid. 201; *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655 n.1 (6th Cir. 2005) (taking judicial notice of information posted online). The plaintiff has not created a genuine issue of fact on this point.

3

states that Smith "had extensive work on the curriculum and pacing guidelines adopted by the Board of Education and was the individual responsible for conducting the SACS re-accreditation visit for [Coopertown Elementary]." (Docket No. 22 ¶ 3.) The only other applicant for the position, Shirley Whitley, was the principal of a middle school at the time she applied.

The assistant principal position that Smith vacated was given to Jo Ann Taylor, a white female. There were nine applicants for the position, including Beard. Whitlow's affidavit states that he hired Taylor because she was "experienced with the curriculum and pacing guidelines, she seemed to be very adaptable to change, [and] she was a problem solver and effective communicator." (*Id.* ¶ 5.) But the most important factor was that Taylor "was recommended for the position by the new principal of the school." (*Id.*)

The assistant principal position at Springfield Middle School was filled by Stephen Owens, a white male. The defendant hired Owens because he was recommended by the principal of the school, "whom he would be required to work closely with in the day to day operation of the school." (*Id.* ¶ 4.) Also, Owens had "designed instructional models for middle schools and possessed exceptional technological skills." (*Id.*)

Beard claims that her educational background and teaching experience made her more qualified than Smith, Taylor, or Owens. In 1968, Beard received a B.S. in speech pathology, audiology, and drama from Tennessee State University ("TSU"). In 1971, while working as a teacher, she earned a Master's degree in English and reading from TSU. In 1976, she earned a Tennessee professional teaching certificate by completing 15 credit hours of graduate study at Trevecca Nazarene College ("Trevecca"), now called Trevecca Nazarene University. Beard

4

completed 30 credit hours of post-graduate study at Trevecca in 1991 and received a state endorsement in supervision, administration, and attendance.  In 2004, she took additional credits at TSU toward a doctorate in supervision and administration, although she did not complete a doctoral degree.

Beard has submitted an affidavit listing her various teaching accomplishments.  For example, for several years, she served as the science supervisor for the county and as the coordinator of a district-wide after-school care program.  She was among 40 teachers who worked with professors at the University of Tennessee-Martin to devise a science curriculum for kindergarten through eighth-grade students between 1987 and 1990.  More recently, Beard designed a model for teaching math to fourth graders and attended a program to develop elementary and middle school curriculum for Tennessee.  In 1999, Beard was the chairperson of the steering committee for the initial Southern Association of Colleges and Schools ("SACS") accreditation, spearheading the process for Watauga Elementary.  For three years, she was the administrator for a federal Job Training Partnership Act program for teenagers.  In 2003, Beard received "high qualified status" as a result of her students' Terra Nova achievement test scores.

On July 15, 2005, after Beard had been denied the Coopertown Elementary principal job but before the application period for the assistant principal jobs had closed, Beard filed a charge of discrimination with the Equal Employment Opportunity Commission.  She claimed that the Board's repeated refusal to promote her constituted racial discrimination.  After failing to secure any of the three promotions, the plaintiff took a stress-related leave of absence.  She retired in 2007, after 38 years of employment in the school district.

5

Case 3:08-cv-00829   Document 33   Filed 01/12/10   Page 5 of 17 PageID #: 150

The EEOC determined that there was reasonable cause to believe that the Board had violated Title VII, and in June 2008 it issued Beard a right-to-sue letter. The plaintiff then filed this suit.

## ANALYSIS

The plaintiff asserts racial discrimination and constructive discharge claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The defendant has filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"'[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Section 1981 Claims

The plaintiff asserts discrimination and constructive discharge claims under 42 U.S.C. § 1981, alleging that the Board violated the statute by refusing to promote her because of her race. The defendant argues that a one-year statute of limitations bars the claims. Although the defendant does not raise the issue, the court notes that a cause of action under 42 U.S.C. § 1983, not § 1981, is the proper and exclusive remedy for "'violation of the rights guaranteed in § 1981 by state governmental units.'" *Arendale v. City of Memphis*, 519 F.3d 587, 598-599 (6th Cir. 2008) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Because the Robertson County Board of Education is a state actor, the court will dismiss the plaintiff's § 1981 claims.

Even if the plaintiff had raised these claims under § 1983, a one-year limitations period would apply.[4] *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (applying Tenn. Code Ann. 28-3-104(a)(3) to § 1983 claims). The filing of an EEOC charge does not toll the statute of

---

[4] In contrast, if the plaintiff were able to bring a § 1981 claim, a four-year limitations period would apply. *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 514 (6th Cir. 2003) (holding that failure-to-promote claims under § 1981 are governed by the limitations period in 28 U.S.C. § 1658); *Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 382-383 (2004) (adopting the same approach).

7

limitations on a § 1983 claim. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465-66 (1975) (finding no tolling for § 1981 claims); *Dyer v. Radcliffe*, 169 F. Supp. 2d 770, 778 (S.D. Ohio 2001) (applying *Johnson* to § 1983 claims); *Carver v. U-Haul Co.*, 830 F.2d 193 (6th Cir. 1987) (stating that *Johnson* applies to § 1983 claims). The plaintiff retired in March 2007, more than one year before filing this suit in August 2008. Because any promotion-related acts of discrimination occurred outside of the limitations period, the court would dismiss any § 1983 claims as untimely.[5]

### III. Constructive Discharge Claim

The plaintiff has asserted a constructive discharge claim, pursuant to Title VII and § 1981, based on the Board's repeated failure to promote her.[6] The defendant argues that Beard's working conditions did not result in a constructive discharge.

"To constitute a constructive discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit[,] and the employee must actually quit." *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). When analyzing working conditions, relevant factors include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5)

---

[5] Furthermore, as explained below, Beard's Title VII claim fails because she has not shown that the defendant's reasons for not promoting her were a pretext for discrimination. A § 1983 claim would fail on the merits for the same reasons. *See, e.g.*, *Samadi v. Ohio Bureau of Employment Servs.*, 48 Fed. Appx. 573, 575 (6th Cir. 2002); *Russell v. Drabik*, 24 Fed. Appx. 408, 412-14 (6th Cir. 2001) (performing one unified analysis of failure-to-promote claims under Title VII and § 1983).

[6] As explained above, § 1981 is not a proper statutory basis for this claim. It is properly a § 1983 claim, which is time barred.

8

> reassignment to work under a younger supervisor; (6) badgering,
> harassment, or humiliation by the employer calculated to
> encourage the employee's resignation; or (7) offers of early
> retirement or continued employment on terms less favorable than
> the employee's former status.

*Logan v. Denny's*, 259 F.3d 558, 569 (6th Cir. 2001) (citation omitted).

Here, the plaintiff's constructive discharge claim is premised entirely on the Board's failure to promote her. This implicates none of the relevant factors – the plaintiff was not demoted, given a reduced salary, or harassed. Instead, she simply remained in the same job, facing the same working conditions as before. "[A] plaintiff cannot establish a constructive discharge by claiming, without more, that [her] employer's 'failure to promote [her] to what [she] perceives as [her] rightful position created intolerable work conditions. If we were to accept this line of reasoning, every person passed over for a purportedly deserved promotion could bring an illegal discharge suit, and the distinction between the two would be erased.'" *Gold v. FedEx Freight E., Inc. (In re Rodriguez)*, 487 F.3d 1001, 1011 (6th Cir. 2007) (quoting *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996)). The court will thus dismiss the plaintiff's constructive discharge claim.

## IV. Exhaustion of Title VII Administrative Remedies

As a threshold matter regarding the plaintiff's Title VII claim, the defendant argues that Beard may only recover damages for the Board's rejection of her February 2005 application, because she did not exhaust her administrative remedies for the other denials of promotion. In response, the plaintiff argues (1) that the defendant's repeated failure to promote her constituted a continuing violation and (2) that she may recover for the two denials postdating the EEOC

9

filing.

Before a plaintiff can sue under Title VII, he or she must first file a charge with the EEOC and receive a right-to-sue letter. An EEOC charge is only timely if it is filed within either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The 300-day period applies if the plaintiff "initially instituted proceedings with a State or local agency." *Id.* As the Supreme Court has explained, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge either within 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). This is true even if previous discrete acts relate to a discrete act that is the subject of a timely EEOC charge. *Id.* at 112. An employer's failure to promote an employee is a discrete act. *Id.* at 114.

This means that Beard can only recover for denials of promotion that happened within 180 days (or at most 300 days) before July 15, 2005, when she filed her EEOC charge. The plaintiff does not dispute the fact that none of the pre-2005 denials meet this criterion. (Docket No. 27 ¶ 18.) Thus, the earliest incident for which she can recover is the denial of her February 2005 application to become principal of Coopertown Elementary. The fact that Beard repeatedly applied for promotions does not change the fact that each denial was a discrete act of alleged discrimination, not a part of a continuing violation. *Morgan*, 536 U.S. at 114.

The plaintiff is, however, allowed to recover for the two denials that happened shortly after she filed her EEOC charge. A claim is allowed if it is within "the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Davis v.*

10

*Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998) (citation omitted); *see also Wedow v. City of Kan. City*, 442 F.3d 661, 672 (8th Cir. 2006) ("Where the alleged discriminatory or retaliatory conduct has occurred subsequent to a timely filed EEOC charge, . . . '[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought.'") The Board was on notice that the EEOC's investigation would cover the two subsequent denials of promotion, particularly because the plaintiff's EEOC charge cast the Board's failure to promote her as a continuing practice.

In sum, the scope of Beard's Title VII failure-to-promote claim is limited to the defendant's decision to deny her the Coopertown Elementary principal, Coopertown Elementary assistant principal, and Springfield Middle School assistant principal positions.

## V. Title VII Failure-to-Promote Claim

On the merits of the Title VII failure-to-promote claim, the defendant argues that the plaintiff has failed to sufficiently rebut the legitimate, nondiscriminatory reasons the Board has given for its hiring decisions.

Title VII discrimination claims are analyzed under the familiar *McDonnell Douglas* framework. To establish a prima facie case, the plaintiff must show that:

> (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and was denied the promotion; and (4) other similarly qualified employees who are not members of the protected class received promotions at the time she was denied a promotion.

*Ray v. Oakland County Circuit Court*, No. 08-2295Ray, 2009 U.S. App. LEXIS 26655, at *7-8

11

(6th Cir. Dec. 7, 2009). The defendant does not dispute that Beard has made this showing.

The burden then shifts to "'[t]he defendant [to] offer admissible evidence of a legitimate, nondiscriminatory reason for its action.'" *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007)) (first alteration in original). If the defendant offers such evidence, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* (citation omitted). The burden is on the plaintiff to show "that the employer's explanation was fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). At each stage of the *McDonnell Douglas* inquiry, "a district court considers whether there is sufficient evidence to create a genuine dispute." *Risch*, 581 F.3d at 390 (citation omitted).

Here, the defendant has offered evidence of its nondiscriminatory reasons sufficient to shift the burden back to the plaintiff; Beard does not argue otherwise. Director Whitlow made the hiring decision on the plaintiff's final two applications, and his affidavit explains how the Board selected Smith, Taylor, and Owens from the qualified applicants for all three positions. Smith, who was hired as principal of Coopertown Elementary, had been the assistant principal of that school for the previous four years and had served as the interim principal for several months. It is obvious that this highly relevant experience might make her the frontrunner in the search for a new principal. Taylor and Owens, who were hired as assistant principals at Coopertown Elementary and Springfield Middle School, respectively, possessed sufficient qualifications and were recommended by the principals of those schools.

12

The burden, then, is on the plaintiff to rebut the proffered reasons.[7] She can do this by showing that the "employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Risch*, 581 F.3d at 391 (citation omitted).

The only evidence that Beard offers is her own self-serving affidavit, which merely claims that she was better qualified than Smith, Taylor, or Owens. But a plaintiff's "subjective view of her qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). The plaintiff presents no evidence regarding the qualifications of the other applicants, such as their resumes, testimony about their educational background, or testimony about their work history. Beard does not argue that the white applicants failed to meet the minimum requirements for the positions, and none of her evidence suggests that they were not minimally qualified.[8] Without evidence of the other applicants' qualifications, there is no basis for Beard to argue that she was more qualified than they were. *See Ray*, 2009 U.S. App. LEXIS 26655, at *20-21 (finding insufficient evidence of pretext despite the plaintiff's unsupported assertions that

---

[7] Curiously, the plaintiff's response brief addresses the issue of pretext – which is the primary substantive dispute in this case – with a single paragraph that contains no case law citations. (Docket No. 28 at 8.)

[8] In her response to the Statement of Undisputed Material Facts, the plaintiff claims that the defendant "has failed to provide evidence of what the definition is of minimum qualifications for each position." (Docket No. 27 ¶ 10.) But under the *McDonnell Douglas* burden-shifting framework, it is the *plaintiff's* burden to offer detailed evidence of the applicants' relative qualifications. This includes explaining the minimum qualifications for the positions (which the plaintiff could have obtained during the discovery process) and showing how the other applicants failed to meet them.

13

other candidates were unqualified).

Even if the court could find that Beard was arguably more qualified, the plaintiff would still need to present additional evidence that the defendant's decisions were based on race. "'[W]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination.'"[9] *Risch*, 581 F.3d at 392 (quoting *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626 (6th Cir. 2006). In other words, to survive summary judgment, the plaintiff must show "other probative evidence of discrimination." *Id.* (citation omitted).

For example, in *Risch*, a female police officer alleged that the police department's failure to promote her was discriminatory. The evidence showed that male officers, including managerial staff, "frequently made degrading comments regarding the capabilities of female officers, expressed the view that female officers would never be promoted to command positions, and made generally degrading remarks about women." *Id.* at 392-93. There was also

---

[9] This seems to conflict with *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008), which stated that "evidence of [the plaintiff's] arguably superior qualifications for the [position at issue], *in and of itself*, could lead a jury to doubt the justifications given for [the defendant's] hiring decision." *Id.* at 394 (emphasis added). But *Risch*, decided a year after *White*, cited *White* and effectively narrowed this broad statement with the requirement of other, additional evidence of discrimination. *Risch*, 581 F.3d at 391-92. Otherwise, courts would be forced in many cases to "substitute [their] judgment for that of management," an undertaking that the Sixth Circuit has "oft times repeated . . . is inappropriate." *Hedrick*, 355 F.3d at 462 (citation and quotation marks omitted).

Furthermore, there was additional evidence of discrimination in *White*, which dealt with a failure-to-promote claim. The plaintiff showed that his supervisor "harbor[ed] a discriminatory animus against African-Americans" and that he received a poor interview evaluation partly because he asked questions about the employer's lack of workplace diversity. *White*, 533 F.3d at 385, 395, 404. In addition, the employer had never hired an African-American for the job at issue. *Id.* at 386.

14

evidence of a lack of women in command positions in the police department. *Id.* at 394. This evidence, combined with evidence that the female officer "was arguably better qualified than the two male candidates [who were] promoted," was enough to create a genuine issue of material fact regarding pretext. *Id.*

There is no such evidence of discrimination in this case. Beard does not claim that she ever faced any racial harassment or that Board employees ever made derogatory statements about African-Americans. Nothing about the hiring process itself was irregular or suggested that white applicants were given a preference.[10] There is no evidence that there are a disproportionate number of white administrators in the school district.[11] *See Bender*, 455 F.3d at 622 ("Appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class."). In fact, the plaintiff's own affidavit mentions at least two African-American principals. Nor does the plaintiff show that the Board consistently hired white applicants from pools of numerous African-American applicants; for example, there were nine applicants for the Coopertown Elementary assistant principal position, and it is unclear if any applicant besides Beard was African-American.

---

[10] Although Beard claims that Director Ellis lied to her about her performance evaluation regarding her term as interim vice principal at Bransford Elementary, that incident is irrelevant. It occurred in 1994, the man who remained as the school's principal was African-American, and Ellis was no longer the Director of Schools in 2005.

[11] Beard claims that, over the course of two decades, the Board hired 13 white applicants instead of her. This undoubtedly represented only a small portion of the administrative hiring in that time period – the court takes judicial notice of the fact that Robertson County currently has 19 schools, including nine elementary schools and three middle schools. http://www.rcstn.net/home/our_schools.

15

In her response to the Statement of Undisputed Material Facts, the plaintiff argues that the EEOC determination letter provides evidence that the Board "has a history of refusing to promote blacks and specifically black females."[12] (Docket No. 27 ¶ 20.) But Beard must support her opposition to summary judgment with admissible evidence. *Alexander v. CareSource*, 576 F.3d 551, 559 (6th Cir. 2009). "An EEOC letter of violation is presumptively inadmissible because it suggests that preliminarily there is reason to believe that a violation has taken place and therefore results in unfair prejudice to defendant." *Sherman v. Chrysler Corp.*, 47 Fed. Appx. 716, 722 (6th Cir. 2002) (citations and quotation marks omitted). Thus, the court will not consider the EEOC letter in deciding the defendant's summary judgment motion. The plaintiff argues in her response brief that the EEOC's finding "was based on the review of the personnel files of the applicants . . . and comparing the qualifications of those applicants with those of Ms. Beard." Docket No. 28 at 8. Inexplicably, the plaintiff has failed to submit those personnel files – or any other evidence, besides her own affidavit – to the court.

The defendant claims that the main reason it hired Taylor and Owens as assistant principals was because they were recommended by the principals of Coopertown Elementary and Springfield Middle School, respectively. The defendant emphasized this factor because assistant principals are "required to work closely with [principals] in the day to day operation of the school." (Docket No. 22 ¶ 4.) This reliance on the principals' recommendations injects a subjective element into the hiring process. Although subjective criteria can potentially provide

---

[12] The plaintiff also cites to two paragraphs in Beard's affidavit, but these paragraphs have nothing to do with the defendant's broader hiring patterns. The affidavit otherwise fails to address the topic.

16

"ready mechanisms for discrimination," there still must be *some* evidence allowing a jury to reject the defendant's nondiscriminatory explanation. *Hendrick*, 355 F.3d at 461 (citation omitted). Also, subjective criteria are less suspect if they are "used to select among various qualified applicants." *Ray*, 2009 U.S. App. LEXIS 26655, at *21; *see also Gee v. Liebert Corp.*, 58 Fed. Appx. 149, 156 (6th Cir. 2003) (finding no pretext when a qualified applicant was hired pursuant to a "very strong recommendation for the job"). Beard has not shown that the hired applicants were unqualified, and she offers no evidence that the two principals were motivated by race.

Ultimately, the plaintiff offers nothing more than her own subjective opinion that she was more qualified than the applicants who were hired. This is not enough to show pretext. Accordingly, the court will dismiss the plaintiff's Title VII failure-to-promote claim.

## CONCLUSION

For all the reasons discussed above, the defendant's Motion for Summary Judgment will be granted, and the plaintiff's case will be dismissed.

An appropriate order will enter.

                                                     ALETA A. TRAUGER
                                                     United States District Judge